(16 Misc. Rep. 638)

## ROBERT v. THOMPSON.

(Supreme Court, Special Term, New York County. April, 1896.)

EASEMENTS—CREATION—RIGHT OF WAY.

    Buildings on several adjoining lots covered the entire fronts of the lots, but left a space in the rear of each. The ground floors were for business purposes, and the floors above were flats. The space in the rear of the buildings was used by the tenants of the flats as an alleyway in carrying in supplies of various kinds and carrying out ashes, garbage, etc., which could have been done through the front of the buildings only with great difficulty. The owner of the buildings leased them to one S. "together with all * * * lanes, alleyways, * * * and advantages to the said grounds belonging or in anywise appertaining." *Held*, that the lease to S. created a right of way over the rear of the lots in favor of each of the separate lots, and that such easement could not be released by S.

Action by Henry Robert against Samuel A. Thompson for an injunction. Judgment for plaintiff.

Maurice Rapp, for plaintiff.

G. M. Boynton, for defendant.

SMYTH, J. This action was brought to obtain an injunction to restrain the defendant from interfering with the use by the plaintiff and his tenants of an alleyway situated in the rear of the defendant's premises, over which alleyway the plaintiff claims an easement or right of way from Eighty-Fourth street to and from the rear of his premises. The Egenton Orphan Asylum, of Baltimore, Md., then and now the owner in fee of the plot of land situate on the westerly side of Third avenue, between Eighty-Third and Eighty-

Fourth streets, in the city of New York, by an indenture of lease dated the 14th day of May, 1885, demised said plot to Thomas Smith for the term of 62 years and 11 months. This lease contained a covenant of renewal, and also a covenant on the part of the lessee, Smith, that he would erect upon the premises 10 or more substantial five-story brick buildings, within two years from the date thereof. The lessor also covenanted that upon the erection and completion of the buildings by Smith, and upon the surrender by him of the lease, it would execute to him (Smith) a separate lease of each lot, together with the building then standing on same, for the residue of said term of 62 years and 11 months. In compliance with the terms of his covenant to erect buildings on the demised premises, Smith proceeded to and did erect, among others, four substantial five-story brick buildings on that portion of the demised premises which fronts on the westerly side of Third avenue, between Eighty-Third and Eighty-Fourth streets, which were then, and are now, known by the street numbers 1482, 1484, 1486, and 1488 Third avenue. The building No. 1488 was erected upon a lot situate on the southwest corner of Eighty-Fourth street and Third avenue; said lot containing 24 feet 2 inches, front and rear, and 93 feet 3 inches in depth on each side. The building erected thereon covers the entire front of the lot, and 89 feet of its depth, thus leaving in the rear of the building an open space or alleyway 4-feet 6 inches in width by 24 feet 2 inches in depth. The three buildings adjoining No. 1488, viz. 1486, 1484, and 1482, also adjoin each other, and each is erected upon a lot of the dimensions of 26 feet front on Third avenue, and 93 feet 6 inches in depth. Each of these three buildings is 26 feet in front and rear, by 80 feet in depth; leaving an open space in the rear of said buildings of 13 feet 6 inches in depth by 78 feet in length, which open space communicates with the alley in the rear of No. 1488, thus leaving an open and unobstructed way or passage from Eighty-Fourth street to and along the rear of each of the said four buildings. Those buildings were constructed so that the first floor of each was fitted up for use as a store for business purposes, and the remaining four floors were fitted up as flats, or separate dwellings. The cellars of the buildings 1486, 1484, and 1482 were each divided into two parts, so that the front portion of each cellar was set apart for the exclusive use of the occupants of the several stores, and each cellar with an entrance thereto from the avenue by way of stairs; and the remaining or rear portion of each cellar was set apart for the exclusive occupation and use of the occupants of the several flats, with entrance thereto from the open space in the rear thereof by means of stairs leading into the rear portion of each cellar. The halls leading from the avenue to the several flats, and the stairs leading from the halls to the flats, are unusually narrow,—not exceeding three feet in width,—and the stairways leading from the main halls to the rear of the cellars are about half that width. The buildings having been completed, and Smith having complied with the covenant to erect them, he surrendered his lease to the lessor, which surrender was accepted; and the lessor thereupon executed and delivered to him a separate lease,

describing each lot by metes and bounds, "together with all improvements thereon made, lanes, alleyways, water privileges, easements, emoluments, and advantages to the said grounds belonging or in any wise appertaining." These leases each bear date on the 7th of May, 1886, and are duly recorded; and each contains, among other covenants, a covenant on the part of Smith, and his legal representatives and assigns, to pay a fixed yearly rent, and also contains the following covenant:

"It is agreed by and between the parties to these presents that if the building and improvements now erected or built on the premises hereby demised shall, at any time during said term hereby granted, be damaged or destroyed by fire or other casualty, the party of the second part shall repair or rebuild the same so that such improvements, sufficiently well repaired, rebuilt, or furnished, shall be standing on the same premises within one year after such damage or destruction."

Each lease also contained a covenant to the effect that if the rent reserved should not be paid at the times and in the manner provided for therein, or if default should be made by the lessee, his executors, administrators, or assigns, in the performance of any of the covenants therein contained, it should be lawful for the lessor, its successors, or assigns, to re-enter upon the premises thereby demised, and to hold the same as if the said lease had never been made. It will thus be seen that by the failure on the part of the lessee, or his representatives or assigns, to comply with the covenants of the lease, the right was given to the lessor to re-enter the demised premises and forfeit the lease under which default had been made, leaving the remaining leases, under which no default had been made on the part of the lessee, or his legal representatives or assigns, in full force and effect. Each lease also contains the following covenant for renewal thereof:

"And it is hereby mutually agreed by and between the parties to these presents that if the said party of the second part, his executors, administrators, or assigns, in case of the damage or destruction of the building and improvements now erected and built upon the premises hereby demised, at any time during the term hereby granted, by fire or other casualty, shall and do repair or rebuild the same so that such building well and sufficiently repaired or rebuilt and finished shall be standing on the said premises at the end and expiration of the said term, and shall fully and faithfully perform, all and singular, the other covenants, stipulations, and agreements on his or their part to be fulfilled and performed, then the said party of the first part, its successors or assigns, shall and will, at the end and expiration of the said term, at its or their option, either grant unto the said party of the second part, his executors, administrators, or assigns, at his or their expense, a new lease of the said premises hereby demised for a further term of twenty-one years thence next ensuing, at the same annual rent as hereinbefore reserved and provided for, and upon the same terms, covenants, and conditions as herein contained, except this covenant of renewal, or else the said party of the first part will then pay to the said party of the second part, his executors, administrators, or assigns, the just and full value, to be ascertained in the manner hereinafter described, of any building which may be then standing on the said hereby demised premises; and such renewed lease shall also contain a covenant by the said party of the first part, its successors or assigns, to the effect that on payment by the lessee, his executors, administrators, and assigns, of said rent, and performance of all covenants therein on his or their part to be paid and performed, the said Egenton Orphan Asylum, party of the first part, its successors or assigns, shall and will, at the end and expiration of the said renewed term of twenty-one years, at its or their option,

either pay to the said lessee, his executors, administrators, or assigns, the just and full value, to be ascertained as is hereinafter provided, of any building which may be then standing on the said hereby demised premises, or grant unto the said lessee, his executors, administrators, or assigns, at his or their expense, a new lease of the said premises thereby demised for a further term of twenty-one years thence next ensuing, containing the same covenants and conditions as in such lease for the first renewed term of twenty-one years (except as regards rent, and except that such new lease shall contain no covenant for any further renewal, or for payment for any building standing on said premises, or for rebuilding in case of fire, but, in lieu of such covenant for rebuilding, such new lease shall contain a covenant by the lessee to keep the building on the land insured in an amount approved by the lessor, and, in case of fire, either to rebuild, or pay over insurance to the lessor, its successors, or assigns); such new lease to provide for reserving such annual rent as shall then have been agreed upon by the parties, or otherwise settled and ascertained, as is hereinafter provided, but not less than the rent reserved by these presents, and at the expiration of such second renewed lease any building which may be then standing on the said hereby demised premises shall belong to the party of the first part, its successors or assigns."

On the 1st of February, 1887, Smith assigned his interest in the lease of the premises No. 1488 to the defendant in this action. This assignment is in the usual form of such instruments, and contains the following provision:

"And it is mutually covenanted and agreed between said parties that said Samuel A. Thompson [the defendant] shall have the right to use the alley-way in the rear of said demised premises as long as the premises immediately adjoining on the south shall belong to said Smith."

It is apparent upon the face of this instrument that by inserting Thompson's name, instead of Smith's, in that part of it which is above quoted, an error was committed by the person who drew the instrument; Smith having parted with his interest in the premises, the lease of which he had assigned to Thompson. It was evidently the intention of both Smith and Thompson that Smith should reserve the right to the use of the easement over the alleyway in the rear of the premises. On the 2d of October, 1888, Smith assigned his interest in the lease of the premises No. 1482 Third avenue. On the 5th of January, 1893, he also assigned his interest in the lease of the premises No. 1486 Third avenue; and on the 15th of October, 1894, he assigned his interest in the lease of the premises No. 1484 Third avenue to the plaintiff in this action, who has ever since been in the occupation thereof under the said lease. There is no direct reference made in either of these last-mentioned assignments to the alleyway in the rear of the premises No. 1488. The evidence clearly established all of the above-mentioned facts, and the further fact that from the time of the completion of the buildings down to the time of Smith's decease, which occurred in the month of November, 1894, the alleyway in question was constantly, openly, and freely used by Smith and the occupants of the buildings Nos. 1486, 1484, and 1482 Third avenue as a means of ingress and egress to and from the rear of their respective premises to Eighty-Fourth street, and said alley was also used by the assignees of Smith and their tenants, occupants of the said flats, and that the use by them was notorious, and known to the defendant in this action, and without objection or interference on his part, until the

month of January, 1895, when, as the evidence shows, he first assert-
ed his exclusive right to the use of said alley, and the right to pre-
vent its further use by others, by erecting a fence across that end
of said alley which adjoins and connects with the open space in the
rear of the adjoining houses on the south of said defendant's prem-
ises.    It also appears that the alleyway was openly and constantly
used by the occupants of said houses, including the plaintiff, for the
purpose of bringing into the cellars of their premises, from Eighty-
Fourth street, such necessary supplies as coal, wood, and ice, and
from thence conveying such supplies to the several flats, and also for
the purpose of removing from said flats to Eighty-Fourth street, over
said alleyway, ashes and garbage.    It further appears by the evi-
dence in this case that while it is not impossible for the plaintiff and
his tenants, and the occupants of the flats in the houses adjoining
his premises, to convey such supplies from Third avenue to their
respective flats, and to remove garbage and ashes therefrom to the
avenue by means of the stairs and hallways, it is nevertheless very
difficult to do so.    The halls and stairways, as already shown, being
so narrow, renders it almost impossible to do so, and would cause
serious inconvenience and interference with the reasonable use and
occupation of their respective premises.    The evidence also estab-
lished the fact that as a result of the closing of said alleyway, and
the prevention of its use by the occupants of plaintiff's house, plain-
tiff has been compelled to reduce the rents of the tenants occupy-
ing the flats in his premises.    Upon all of the facts established by
the evidence in this case, I am of the opinion that by the leases
from the orphan asylum to Smith of the several parcels of land, with
the buildings thereon erected, and which were then erected at the
time of the execution thereof, and by the acceptance of said several
leases by Smith, in each of which is contained a provision referring
to the alleyway as it then existed in the rear of the premises now
occupied by the defendant, a right of way or an easement over said
alleyway was created in favor of each of the separate premises
which adjoins those of the defendant, including the premises of the
plaintiff, for the separate benefit of each of said premises, and that
the easement thus created was not an easement in gross or a per-
sonal privilege granted to Smith, which could be released by him,
he being a mere tenant, having no greater estate in the premises
than that of a leasehold, which leasehold was subject to be termi-
nated, and the buildings become the absolute property of the lessor,
by Smith's nonperformance, or the nonperformance of his repre-
sentatives or assigns, of the covenants contained in each separate
lease.    An examination of the authorities bearing upon this sub-
ject convinces me that an "easement appurtenant" to each sep-
arate parcel of the demised premises was created by each lease,
and that it was not within the power of Smith to release the servient
premises from such easement without the consent of the lessor,
who was a party to its creation, and whose interest in the contin-
uance of such easement is manifest under the terms of said leases.
I have also arrived at the conclusion that, by a reasonable con-
struction of the terms of the assignment of the lease under which

the defendant now holds the premises occupied by him, the paragraph contained in said assignment, which is above quoted, did not and does not operate as a release of the defendant's premises from the easement so created; and in this view I am sustained by the evidence in this case, which clearly shows that no such intention existed in the mind of Smith at the time he assigned his interest in the lease of the premises now occupied by the plaintiff, or in the mind of the defendant at the time Smith assigned the lease under which he holds the premises, in the rear of which the alleyway in question is located. The evidence shows that, prior to the execution of the assignment by Smith to the plaintiff, he informed the plaintiff that the right to use the alleyway in question then existed, and would pass to plaintiff by virtue thereof; and that this was also the understanding of the defendant, may, I think, be inferred from the fact that when he took the assignment of the lease now held by him from Smith, the alleyway in question was then in existence and use, and had been used prior to said assignment by the occupants of the buildings adjoining his premises, without any interruption or assertion of the exclusive right thereto on his part, until as above stated, for a period of six or seven years after the delivery of the assignment by Smith to him of the lease under which he has since occupied said premises. The following authorities appear to sustain the conclusions I have arrived at in this case: Hills v. Miller, 3 Paige, 254; Huttemeier v. Albro, 18 N. Y. 48; Lampman v. Milks, 21 N. Y. 505; Cox v. James, 45 N. Y. 557.

The plaintiff is entitled to judgment as prayed for, with costs. Ordered accordingly.